**131 Nev., Advance Opinion 16**

IN THE COURT OF APPEALS OF THE STATE OF NEVADA

| | |
|---|---|
| JIMMY D. PITMON,<br>Appellant,<br>vs.<br>THE STATE OF NEVADA,<br>Respondent. | No. 65000<br><br>**FILED**<br><br>MAR 2 6 2015<br><br>TRACIE K. LINDEMAN<br>CLERK OF SUPREME COURT<br>BY_____<br>CHIEF DEPUTY CLERK |

Appeal from a judgment of conviction of attempted lewdness with a child under the age of 14. Eighth Judicial District Court, Clark County; Douglas W. Herndon, Judge.

*Affirmed.*

Turco & Draskovich, LLP, and Robert M. Draskovich, Las Vegas; Law Office of Gary A. Modafferi and Gary A. Modafferi, Las Vegas, for Appellant.

Adam Paul Laxalt, Attorney General, Carson City; Steven B. Wolfson, District Attorney, and Steven S. Owens, Chief Deputy District Attorney, Clark County, for Respondent.

BEFORE GIBBONS, C.J., TAO and SILVER, JJ.

*OPINION*

By the Court, TAO, J.:

When a criminal defendant stands convicted of two or more felony criminal offenses and has already been sentenced to a term of imprisonment for one of those offenses, NRS 176.035(1) expressly permits

a district court to order that the sentence for the second offense be imposed either concurrently or consecutively to the first sentence. In this appeal, appellant Jimmy D. Pitmon asserts that NRS 176.035(1) violates the Due Process Clause of the United States and Nevada Constitutions[1] because it fails to articulate any "pre-existing and reviewable criteria" to guide the district court in deciding whether the second sentence should be imposed concurrently or consecutively. We conclude that NRS 176.035(1) is not constitutionally deficient and therefore affirm.

## FACTS

Pitmon was originally charged in three separate cases with multiple counts of attempted lewdness with a child under the age of 14 arising from allegations that he fondled the genitals of three different 4-year-old children on multiple occasions. The charges in two of those cases were eventually consolidated together into a single case (the first case), leaving two cases pending. Following negotiations with the district attorney, Pitmon agreed to enter a plea of guilty in each case to one count of attempted lewdness with a child under the age of 14, and all other pending charges and counts were to be dismissed after rendition of sentence.

The written guilty plea agreements signed by Pitmon in both cases were virtually identical, and both specified that the State retained the right to argue at sentencing. The guilty plea agreements also

_____

[1]The Fourteenth Amendment to the U.S. Constitution and Article 1, Section 8, paragraph 5 of the Nevada Constitution both provide that no person shall be deprived of "life, liberty, or property, without due process of law."

acknowledged that the sentencing judge possessed the discretion to order that the sentences be served either concurrently or consecutively.

Prior to sentencing, Pitmon underwent a psychosexual evaluation by psychologist Dr. John Paglini and was classified as a "high" risk to reoffend, which rendered him statutorily ineligible to receive probation. *See* NRS 176A.110. During his interview with Dr. Paglini, Pitmon admitted to inappropriate sexual contact with a fourth child years before the instant offenses. Thus, the presentence investigation report prepared by the Nevada Division of Parole and Probation noted that Pitmon had victimized at least four minor children over the course of a decade.

Pitmon was sentenced in the first case and received the maximum possible sentence, which was a minimum term of 8 years and a maximum term of 20 years' imprisonment. *See* NRS 193.330(1)(a)(1); NRS 201.230(2). Two days later, he appeared for sentencing in the instant case and again received the maximum possible sentence. Additionally, the district judge in the instant case ordered that the sentence be served consecutively to the sentence previously imposed in the first case.

Pitmon failed to file a direct appeal from his conviction, but the district court subsequently found that Pitmon had been improperly deprived of a direct appeal and permitted Pitmon to file the instant appeal pursuant to NRAP 4(c)(1).

## DISCUSSION

In general, district judges in Nevada possess wide discretion in imposing sentences in criminal cases. *See Houk v. State*, 103 Nev. 659, 664, 747 P.2d 1376, 1379 (1987) ("The sentencing judge has wide discretion in imposing a sentence . . . ."). On appeal, a sentence imposed in

district court will not be overruled absent a showing of "abuse of discretion." *Id.* Thus, appellate courts will refrain from interfering with sentences imposed in district court "[s]o long as the record does not demonstrate prejudice resulting from consideration of information or accusations founded on facts supported only by impalpable or highly suspect evidence." *Silks v. State*, 92 Nev. 91, 94, 545 P.2d 1159, 1161 (1976). Furthermore, regardless of its severity, a sentence that is within the statutory limits is not considered to violate the Eighth Amendment's proscription against "'cruel and unusual punishment unless the statute fixing punishment is unconstitutional or the sentence is so unreasonably disproportionate to the offense as to shock the conscience.'" *Blume v. State*, 112 Nev. 472, 475, 915 P.2d 282, 284 (1996) (quoting *Culverson v. State*, 95 Nev. 433, 435, 596 P.2d 220, 222 (1979)); *see Harmelin v. Michigan*, 501 U.S. 957, 1000-01 (1991) (plurality opinion) (explaining that the Eighth Amendment does not require strict proportionality between crime and sentence, but forbids only an extreme sentence that is grossly disproportionate to the crime).

In this appeal, Pitmon does not contend that his sentence was "cruel and unusual," or that the district court relied upon "impalpable or highly suspect evidence" in imposing his sentence. Pitmon also does not allege that his sentence constituted an "abuse of discretion" under the particular circumstances of this case. Rather, Pitmon argues that NRS 176.035(1) is facially unconstitutional because it affords virtually unfettered discretion to the district court to determine whether sentences for separate offenses should be imposed concurrently or consecutively. Thus, Pitmon argues that NRS 176.035(1) fails to comply with the Due Process Clause because an ordinary citizen facing sentencing for different

offenses cannot reasonably understand or anticipate whether the sentences are likely to be imposed concurrently or consecutively. Pitmon further contends that the statute lacks meaningful or specific standards guiding when consecutive sentences may be imposed and permits arbitrary imposition of those sentences by a district court. More broadly, Pitmon also argues that Nevada's sentencing scheme is invalid because it lacks meaningful appellate review of any sentence imposed by a district court, no matter how arbitrary that sentence may have been.

The constitutionality of a statute is a question of law that this court reviews de novo. *See Flamingo Paradise Gaming, LLC v. Chanos,* 125 Nev. 502, 509, 217 P.3d. 546, 551 (2009). Statutes are presumed valid, and the burden therefore falls upon Pitmon to make a "clear showing of invalidity." *Silvar v. Eighth Judicial Dist. Court,* 122 Nev. 289, 292, 129 P.3d 682, 684 (2006). A statute may be challenged as unconstitutional either because it is vague on its face, or because it is vague as applied only to the particular challenger. *Flamingo Paradise,* 125 Nev. at 509-10, 217 P.3d at 551-52. Here, Pitmon asserts that NRS 176.035(1) is unconstitutional on its face because it is inherently vague with respect to any sentence that could be imposed upon any criminal defendant who stands convicted of multiple offenses.

When analyzing whether a statute is unconstitutionally vague in violation of the Due Process Clause, courts generally apply a two-factor test. *Silvar,* 122 Nev. at 293, 129 P.3d at 685; *see also Kolender v. Lawson,* 461 U.S. 352, 357 (1983). Under this two-factor test, a statute is unconstitutionally vague if it "(1) fails to provide notice sufficient to enable persons of ordinary intelligence to understand what conduct is prohibited and (2) lacks specific standards, thereby encouraging, authorizing, or even

failing to prevent arbitrary and discriminatory enforcement." *Silvar*, 122 Nev. at 293, 129 P.3d at 685.

To be considered unconstitutional on its face, a statute must be vague "in all of its applications." *Flamingo Paradise*, 125 Nev. at 511-12, 217 P.3d at 552-53. When a challenge is made to a statute that implicates criminal penalties or constitutionally protected rights, the statute is unconstitutional if the vagueness "so permeates the text that the statute cannot meet these requirements in most applications; and thus, this standard provides for the possibility that some applications of the law would not be void, but the statute would still be invalid if void in most circumstances." *Id.*

Pitmon's challenge to NRS 176.035(1) runs as follows. He contends that sentences for different offenses should normally be imposed concurrently because the statute specifies, in its second sentence, that "if the court makes no order with reference thereto, all such subsequent sentences run concurrently." NRS 176.035(1). Pitmon interprets this sentence as an intentional restriction by the Nevada Legislature upon the discretion of district courts to impose consecutive sentences by requiring that such sentences usually be imposed concurrently "by default." Therefore, Pitmon argues that, because a person of ordinary intelligence would understand that all subsequent sentences must normally run concurrently by default, a district court cannot constitutionally deviate from this expectation in the absence of clearly established criteria. Because those clear criteria are missing from the statute, he avers that the statute is unconstitutional unless all subsequent sentences are imposed concurrently.

The fundamental problem with Pitmon's argument is that it misreads NRS 176.035(1). In analyzing the meaning of a statute, the court must interpret it in a reasonable manner, that is, "[t]he words of the statute should be construed in light of the policy and spirit of the law, and the interpretation made should avoid absurd results." *Desert Valley Water Co. v. State*, 104 Nev. 718, 720, 766 P.2d 886, 886-87 (1988). A statute "should be given [its] plain meaning and must be construed as a whole and not be read in a way that would render words or phrases superfluous or make a provision nugatory." *Mangarella v. State*, 117 Nev. 130, 133, 17 P.3d 989, 991 (2001) (internal quotations omitted).

Pitmon focuses upon a single sentence of NRS 176.035(1) in isolation and ignores the very first sentence of NRS 176.035(1), which expressly states that a district court "may" impose consecutive subsequent sentences. When the first and second sentences of the statute are read together, as they must be, it is clear that NRS 176.035(1) was not intended to restrict the ability of sentencing courts to impose consecutive sentences for separate offenses, but rather was intended to give district courts discretion in determining whether such sentences should be imposed consecutively or concurrently.

When the language of a statute is plain and unambiguous, the court is not permitted to look for meaning beyond the statute and the court will only go to legislative history when the statute is ambiguous. *Estate of Smith v. Mahoney's Silver Nugget, Inc.*, 127 Nev. ___, ___, 265 P.3d 688, 690 (2011). We conclude that the plain language of NRS 176.035 is unambiguous. However, even if we were to find that the plain language of the statute was ambiguous, the legislative history clearly demonstrates that NRS 176.035 was intended to give district courts discretion in

determining whether such sentences should be imposed consecutively or concurrently.

NRS 176.035 was originally enacted in 1967. Prior to 1987, the statute required that any subsequent offense committed while a defendant was on probation for an earlier offense was required to be imposed consecutively. In 1985, the Governor and the Legislature established a "Commission to Establish Suggested Sentences for Felonies," which studied Nevada's sentencing statutes and issued a report in December 1986 recommending extensive revisions to Nevada's criminal statutes. Some of these recommendations were reflected in Assembly Bill (A.B.) 110, introduced during the 1987 legislative session. Witnesses testified to the Legislature that, among other suggested changes, judges should be given discretion to determine whether sentences for subsequent offenses should be imposed concurrently or consecutively, and that the statute should not impose a "default" requirement either way. (*See* Hearing on A.B. 110 Before the Assembly Judiciary Comm., 64th Leg. (Nev., May 26, 1987)). The Legislature enacted A.B. 110, which revised NRS 176.035(1) to specify that judges have discretion to determine whether sentences for subsequent crimes should be imposed concurrently or consecutively.

More recently, NRS 176.035(1) was further revised by the Legislature in 2013 through Senate Bill (S.B.) 71 (in a manner that became effective in July 2014 and therefore does not apply to Pitmon's conviction). The introduction to S.B. 71 describes the version of NRS 176.035 that applies to Pitmon's conviction as follows:

> Under [pre-2014] law, a person who is convicted of committing more than one crime may be

> sentenced to serve the sentences *imposed for each*
> crime concurrently or consecutively.

S.B. 71, 77th Leg. (Nev. 2013).

Thus, the legislative history of NRS 176.035 makes clear that the Nevada Legislature did not intend NRS 176.035(1) either to limit the discretion of district judges to impose sentences concurrently or consecutively, or to require that such sentences be imposed concurrently "by default." Quite to the contrary, the 1987 amendments to NRS 176.035(1) were expressly designed to give judges greater discretion over such decisions than they had before 1987 when such sentences were required to be imposed consecutively. Accordingly, it cannot be said that NRS 176.035(1) was intended to require that a person facing sentencing for two different offenses should be awarded concurrent sentences rather than consecutive ones.

If anything, it strikes the court that an ordinary person who chooses to commit two offenses and is convicted of both should reasonably anticipate the possibility, and perhaps even the likelihood, that he or she will have to serve consecutive sentences for each crime. To conclude otherwise would be to effectively reward defendants who commit multiple offenses and require that they be sentenced as if they had only committed one. Nothing in the Due Process Clause demands that defendants who commit multiple crimes must receive the same sentence as defendants who commit only one. *See United States v. Mun*, 41 F.3d 409, 413 (9th Cir. 1994) (defendant does not have a due process right to concurrent sentences); *see also Isreal v. Marshall*, 125 F.3d 837, 839 (9th Cir. 1997) ("[N]o right to concurrency inheres in the Due Process Clause . . . .").

Furthermore, the Due Process Clause does not require that every sentencing statute include specifically enumerated and rigorously

defined checklists that must be mechanically applied by rote in every case. *See Branch v. Cupp*, 736 F.2d 533, 536 (9th Cir. 1984) (stating that defendant's due process rights were not violated merely because judge failed to articulate specific reasons for imposing sentence). Rather, the nature of criminal sentencing in Nevada is such that judges must be able to exercise discretion in order to match the sentence imposed in each case to the nature of a particular crime, the background of a particular defendant, the potential effect of the crime on any victim, and any other relevant factor. As former Justice Rose observed, "[l]egislatures cannot create enough sentencing law to match the nuances of each crime and perpetrator, and thus they confer on their respective judiciaries some discretion in sentencing." *Sims v. State*, 107 Nev. 438, 443, 814 P.2d 63, 66 (1991) (Rose, J., dissenting). The mere existence of such discretion does not, by itself, render a statute unconstitutionally vague. The Due Process Clause does not require mathematical precision, but only that statutes be comprehensible to persons of ordinary intelligence.

Pitmon contends that many of our sister states have enacted legislation that removes such unbounded discretion from sentencing judges and instead requires that specific findings be made before consecutive sentences may be imposed.[2] But the fact that many states

---

[2]*See* Alaska (Alaska Stat. § 12.55.127 (2014)); Arizona (Ariz. Rev. Stat. Ann. § 13-708 (Supp. 2014)); Arkansas (Ark. Code Ann. § 5-4-403 (2013)); Florida (Fla. Stat. Ann. § 921.16 (West Supp. 2015)); Idaho (Idaho Code Ann. § 18-308 (2004)); Illinois (730 Ill. Comp. Stat. Ann. 5/5-8-4 (West Supp. 2014)); Kansas (Kan. Stat. Ann. § 21-4608 (2007)); Kentucky (Ky. Rev. Stat. Ann. § 532.110 (LexisNexis 2008)); Maryland (Md. Rules § 4-351 (LexisNexis 2015); Md. Code Ann., Corr. Servs. § 9-201 (LexisNexis 2008)); Mississippi (Miss. Code Ann. § 99-19-21 (2007)); Missouri (Mo. Ann. Stat. § 558.026 (West 2012)); Montana (Mont. Code Ann. § 46-18-401

*continued on next page...*

have chosen to remove such discretion from sentencing judges does not mean that such discretion is constitutionally prohibited or that similar standards are constitutionally mandated in every state.

Further, the failure to require the district court to make specific findings before imposing consecutive sentences does not render the sentence unreviewable on appeal. A sentence may be reversed on appeal either if the record demonstrates "prejudice resulting from consideration of information or accusations founded on facts supported only by impalpable or highly suspect evidence," *Silks v. State*, 92 Nev. 91, 94, 545 P.2d 1159, 1161 (1976), or if the sentence was "so unreasonably disproportionate to the offense as to shock the conscience," *Blume v. State*, 112 Nev. 472, 475, 915 P.2d 282, 284 (1996) (internal quotations omitted). *See Harmelin v. Michigan*, 501 U.S. 957, 1000-01 (1991) (plurality opinion) (explaining that the Eighth Amendment does not require strict proportionality between crime and sentence, but forbids only an extreme sentence that is grossly disproportionate to the crime). Pitmon fails to explain why the Due Process Clause must be read to mandate that appellate courts in Nevada be given more authority than they currently possess to review criminal sentences, or why the existing standards are constitutionally insufficient to protect the rights of a defendant sentenced in Nevada. Pitmon's concerns are more properly left to the Legislature.

---

...*continued*
(2011)); New Jersey (N.J. Stat. Ann. § 2C:44-5 (2005)); Texas (Tex. Crim. Proc. Code Ann. § 42.08 (West Supp. 2014)); Utah (Utah Code Ann. § 76-3-401 (LexisNexis 2012)); and Wisconsin (Wis. Stat. Ann. § 973.15 (West 2007)).

On balance, we cannot conclude that the text of NRS 176.035(1) is so "permeated" by vagueness that the imposition of consecutive sentences would be unfair "in most circumstances" whenever a defendant is sentenced for committing two separate crimes. Quite to the contrary, it seems to the court that the imposition of consecutive sentences for the commission of two separate crimes would represent an outcome reasonably to be expected by persons of ordinary intelligence. *See Fierro v. MacDougall*, 648 F.2d 1259, 1260 (9th Cir. 1981) (concluding that, even where legislature did not authorize the imposition of consecutive sentences, due process clause permitted judge to impose consecutive sentences because "[t]he imposition of consecutive sentences is nothing more than the imposition, for each crime, of the sentence fixed by legislative act. Such sentencing [constitutes] literal compliance with that which the legislature has prescribed.").

To the extent that Pitmon asserts that his sentences were unconstitutional "as applied" to him, we conclude that the sentences imposed did not violate constitutional standards and the district court did not abuse its discretion by ordering that those sentences be served consecutively. Pitmon entered pleas of guilty to only two felony counts even though he was originally charged with committing similar offenses against three different children over a period of several months and admitted to committing additional offenses against a fourth child on prior occasions. Further, his psychosexual evaluation classified him as a "high" risk to reoffend. We conclude that the sentences imposed were not unreasonably disproportionate to the offenses to which Pitmon pleaded guilty, even though he received consecutive maximum sentences.

## CONCLUSION

For the reasons discussed above, we conclude that NRS 176.035(1) is not unconstitutionally vague in violation of the Due Process Clause of the U.S. and Nevada Constitutions. Accordingly, we affirm the sentence imposed by the district court.

_____, J.
Tao

We concur:

_____, C.J.
Gibbons

_____, J.
Silver

COURT OF APPEALS
OF
NEVADA

(O) 1947B